Matter of Ja'Sire FF. (Jalyssa GG.) (2022 NY Slip Op 03551)

Matter of Ja'Sire FF. (Jalyssa GG.)

2022 NY Slip Op 03551

Decided on June 2, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 2, 2022

529358
[*1]In the Matter of Ja'Sire FF. and Another, Alleged to be Neglected Children. Chemung County Department of Social Services, Respondent; Jalyssa GG., Appellant.

Calendar Date:April 25, 2022

Before:Garry, P.J., Aarons, Pritzker, Reynolds Fitzgerald and Fisher, JJ.

Lisa K. Miller, McGraw, for appellant.
M. Hyder Hussain, County Attorney, Elmira (James E. DeFilippo of counsel), for respondent.
Andrea J. Mooney, Ithaca, attorney for the children.

Fisher, J.
Appeals from two orders of the Family Court of Chemung County (Tarantelli, J.), entered January 9, 2020, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Respondent is the mother of a son (born in 2015) and a daughter (born in 2017). In April 2018, the children's maternal grandmother (hereinafter the grandmother) filed a custody petition seeking joint custody of the son. Shortly thereafter, the daughter's father, John EE. (hereinafter the father), filed a petition seeking emergency custody of the daughter. From April 2018 through November 2018, respondent, the grandmother and the father filed numerous custody and violation petitions against each other. Although most of these petitions were dismissed, Family Court ultimately granted temporary custody of the daughter to the father and temporary custody of the son to the grandmother. In November 2018, following an order by Family Court to conduct an investigation pursuant to Family Ct Act § 1034, petitioner filed a neglect petition against respondent pursuant to Family Court's direction.
Petitioner alleged that the children were neglected by respondent based on her "history of displaying verbal and physically aggressive behavior in the presence of her children" and expressly described two instances where respondent's conduct required police intervention. Following a removal hearing, Family Court modified the temporary custody order placing the son with the grandmother under Family Ct Act article 6 into a placement under Family Ct Act article 10. Family Court then held a fact-finding hearing, ultimately finding that the children were neglected by respondent. Following a dispositional hearing, the temporary placements of the children were continued. Respondent appeals.
Respondent contends that Family Court's finding of neglect is not supported by a sound and substantial basis in the record. We disagree. "Neglect is established when a preponderance of the evidence shows that the children's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and that the actual or threatened harm to the children results from the respondent's failure to exercise a minimum degree of care in providing the children with proper supervision or guardianship" (Matter of Jaxxon WW. [Donald XX.], 200 AD3d 1522, 1523 [2021] [internal quotation marks, brackets and citations omitted]; see Nicholson v Scoppetta, 3 NY3d 357, 368 [2004]). "In determining whether a parent has failed to exercise a minimum degree of care, the dispositive inquiry is whether a reasonable and prudent parent would have so acted, or failed to act, under the circumstances" (Matter of Lexie CC. [Liane CC.], 190 AD3d 1165, 1165 [2021] [internal quotation marks, brackets and citations omitted]). "Even a single act of domestic violence may be sufficient to establish neglect if the[*2][children are] present for such violence and [are] visibly upset and frightened by it" (Matter of Kaitlyn SS. [Antonio UU.], 184 AD3d 961, 963 [2020] [internal quotation marks and citations omitted]; see Matter of Cherish C. [Shanikwa C.], 102 AD3d 597, 598 [2013]). In conducting our review, "Family Court's factual findings and credibility determinations are accorded great weight in such a proceeding and will not be disturbed on appeal unless they lack a sound and substantial basis in the record" (Matter of Nathanael E. [Melodi F.], 160 AD3d 1075, 1076 [2018]; see Matter of Jaxxon WW. [Donald XX.], 200 AD3d at 1523).
At the fact-finding hearing, petitioner presented the testimony of a caseworker with Child Protective Services who became involved with the case in either January or February 2018 after receiving a Family Assessment Response referral.[FN1] The caseworker testified that she had a meeting with respondent and recommended that respondent obtain mental health counseling for anger management, but respondent refused to do so and the referral was closed. The caseworker testified she had no further contact with respondent until a hotline report was received in June 2018, which alleged that respondent left the children in the City of Binghamton, Broome County with an unknown person. The caseworker testified that, while she was investigating this report, there were two incidents during which respondent became enraged. The first incident occurred a few days after the report was received, when respondent called the caseworker to her residence because the grandmother obtained temporary custody of the son and was attempting to pick him up. According to the caseworker, when she explained that respondent had to comply with the order, respondent became upset and started yelling, cursing and making threats to cause the caseworker bodily harm — to the point that the police were called to deescalate the situation and facilitate the custody exchange of the son to the grandmother. The caseworker described the son as having become "very visibly upset" and "hysterical" as he began to cry and shake. The second incident occurred in August 2018, when respondent became upset at the grandmother during a custody exchange and threw a coat hanger at the grandmother, striking her on the shoulder; the grandmother was carrying the daughter at the time she was struck.
The grandmother also testified at the fact-finding hearing, corroborating the caseworker's testimony about the two incidents and adding additional details as to the second incident. Specifically, the grandmother testified that, before throwing the hanger during the August 2018 exchange, respondent was screaming at her and telling her to "go die" and that she needs to kill herself. The grandmother further explained that, had she not turned around, the thrown hanger would have hit the daughter in the back of the head. Relating to the substance of the hotline report, the grandmother testified that she [*3]had received a telephone call at 4:00 a.m. telling her that she needed to drive to Binghamton to pick up the children, otherwise they would be left in a hotel. The grandmother further explained that, when she arrived at a fast-food parking lot to pick up the children, they were with individuals unknown to the grandmother and respondent had already left on a bus trip to New York City.
A caseworker with petitioner's Children and Family Services unit (hereinafter CFS) also testified about her in-person interactions with respondent, stating that respondent swore, yelled and became "verbally aggressive" toward her on several occasions when the caseworker tried to discuss topics related to her case — including in the presence of the children. Several members of respondent's family testified — some corroborating the testimony of the June 2018 incident and respondent's angry outbursts in front of the children, others disagreeing or limiting the outbursts to only an isolated incident or not at all. For her part, respondent testified that she was participating in mental health services to deal with her anger management and intended to complete same.
In our view, Family Court's finding that petitioner established neglect by a preponderance of the evidence is supported by a sound and substantial basis in the record (see Matter of Nathanael E. [Melodi F.], 160 AD3d at 1076). There is ample evidence in the record that respondent's anger issues and violent outbursts occurred in the presence of her children, were witnessed by them and caused them to become visibly upset (see Matter of Maggie YY. [Lisa ZZ.], 172 AD3d 1562, 1563 [2019]). This included an incident where respondent threw a coat hanger at the grandmother during an exchange, and a single act of domestic violence is sufficient to support a finding of neglect (see Matter of Kaitlyn SS. [Antonio UU.], 184 AD3d at 963), including an act of domestic violence between a grandmother and a mother while a child is being held by one of them (see Matter of Cherish C. [Shanikwa C.], 102 AD3d at 598). Further, considering the testimony relating to the incident where the grandmother was forced to drive to another county to pick up the children from a group of strangers after respondent stated that the children would be left at a hotel while she went on a trip, we are satisfied that, affording Family Court's credibility determinations great weight, the evidence demonstrated that respondent's inability to provide reasonable care for the children was impairing their well-being (see Matter of Jaxxon WW. [Donald XX.], 200 AD3d at 1523; Matter of Kaitlyn SS. [Antonio UU.], 184 AD3d at 963; Matter of Nathanael E. [Melodi F.], 160 AD3d at 1076).
Next, respondent challenges the conditions set forth in the dispositional order. A dispositional order in a neglect proceeding "must reflect a resolution consistent with the best interests of the children after consideration of all relevant facts and circumstances, and must [*4]be supported by a sound and substantial basis in the record" (Matter of Hayley QQ. [Heather RR.], 176 AD3d 1343, 1346 [2019] [internal quotation marks and citation omitted]; see Matter of Mariah K. [Rachael K.—Jay L.], 165 AD3d 1379, 1380 [2018]).
At the dispositional hearing, the caseworker from CFS testified again regarding her involvement with respondent, including that respondent had engaged in mental health counseling and anger management services. The caseworker further described the strained relationship between respondent and the grandmother that was detailed in the prior proceedings, with interactions still devolving into yelling and cursing exchanges between them. The caseworker testified that she had no safety concerns with the grandmother, however she had safety concerns related to the grandmother's home environment and other individuals who resided with her, specifically drug and alcohol use in the grandmother's home. She further explained that there was a safety plan implemented with the grandmother in this regard. When questioned why, given the safety plan at the grandmother's home, the children should not be reunited with respondent as part of the disposition, the caseworker testified that respondent had only recently entered services, and prior instances of domestic violence, anger issues and overall life stability caused the caseworker not to support an immediate reunification. Although the caseworker noted that respondent had made some positive progress in counseling, the caseworker also testified that moving the son might have a detrimental impact on him given his close bond with the grandmother. Respondent testified at the dispositional hearing, confirming that she had started anger management and mental health services — both of which she believed were helping her and would prevent her prior anger issues from recurring. When asked about a prior domestic violence incident between her and a particular man, respondent stated that the man did currently have a warrant out for his arrest and that he sometimes stayed in the house where she resided. After carefully considering the best interests of the children, Family Court issued a dispositional order, which, among other things, continued the temporary placement of the daughter with the father and the temporary placement of the son with the grandmother. Given the evidence adduced at the hearing, we find no basis to disturb Family Court's conclusion that immediate reunification with respondent was not in the best interests of the children (see Matter of Mariah K. [Rachael K.—Jay L.], 165 AD3d at 1383; Matter of Emmanuel J. [Maximus L.], 149 AD3d 1292, 1296-1297 [2017]).
Respondent's remaining contentions do not require extended discussion. Respondent contends that Family Court lacked the authority to order a child protective agency, such as petitioner, to commence a neglect proceeding against a parent. Respondent highlights our recent decision in 
Matter of Donald QQ. [*5]v Stephanie RR. (198 AD3d 1155 [2021]), which was decided during the pendency of this appeal, for support of her argument that the neglect petition should be dismissed. This argument is unpreserved as it is raised for the first time on appeal and could have been raised during the nearly 14-month period between such direction and the dispositional order (but cf. Matter of Regina R. v Frederick S., 198 AD3d 1124, 1124 n 2 [2021]; Miller Greenberg Mgt. Group, LLC v Couture, 193 AD3d 1273, 1275 n 2 [2021]). Also unpreserved is respondent's argument that Family Court should have recused itself from resolving the neglect petition after it directed petitioner to file said petition, as respondent did not object or move for recusal (see Matter of Dawn M. [Michael M.], 174 AD3d 972, 976 [2019], lv denied 34 NY3d 907 [2020]; Matter of Ashlyn Q. [Talia R.], 130 AD3d 1166, 1169 [2015]). Finally, respondent's contention that Family Court violated her due process rights by issuing custody orders without hearings in response to the petitions filed by the grandmother and the father is both unpreserved and outside the scope of this Court's review as such orders were not appealed (see Matter of Kathleen K. v Daniel L., 177 AD3d 1130, 1133 [2019]; Matter of Isaiah M. [Nicole M.], 144 AD3d 1450, 1452 [2016], lv dismissed 28 NY3d 1129 [2017]).
Garry, P.J., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the orders are affirmed, without costs.

Footnotes

Footnote 1: Also known as a FAR, this type of referral is an alternative child protective action that is used when there is no immediate danger to the children, and therefore it does not require an investigation and determination of allegations of child maltreatment like a hotline report would require.